IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ROBERT BUSH** | § | |
| *Plaintiff* | § | |
| | § | **CIVIL ACTION NO. 1:18-cv-1024-RP** |
| **vs.** | § | |
| | § | **Jury requested** |
| **KADIRNET, LLC** | § | |
| *Defendant* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT KADIRNET'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Robert Bush files this Response to Defendant Kadirnet, LLC's Motion for Summary Judgment [#16] and would respectfully show the Court the following:

## I. SUMMARY

Plaintiff Robert Bush ("Bush"), a former Network Technician for Kadirnet, LLC ("Kadirnet"), asserts claims for unpaid overtime he worked over his tenure working for the defendant, and for unpaid leave time accrued at the time of his layoff. Kadirnet's Summary of Bush's claims is more or less accurate, but its summary of the substance of those claims is not.

**After-Hours Shift Claim.**  Bush asserts that what Kadirnet consistently terms "On-Call" time was not substantially different from his regular shift time, except that it occurred after regular business hours and was worked from home instead of Kadirnet's offices.  Although Bush was able to pursue some limited personal activities during these shifts, Kadirnet's expectations for his work product were such that any "idle time" during these shifts did not offer him freedom in any real sense, and is therefore compensable under the Fair Labor Standards Act.

**Unpaid Overtime Claim.**  Regardless of how much personal freedom Bush had when working After-Hours Shifts, he undeniably worked for the company far in excess of 40 hours each time he worked this shift.  But this time was never properly accounted for, nor was any compensation in connection with this work ever tied to the hours that work was performed.  Thus, Kadirnet failed in its duty to keep accurate records of time Bush worked, and it failed in its duty to properly compensate him for that time.

**Unpaid Accrued Leave Time Claim.**  Bush contends that he had accrued leave time at the time Kadirnet laid him off that was never paid.  To be sure, he was scheduled to take a paid vacation in May.  After he was laid off on May 7, this leave time disappeared.  He should be compensated for what Kadirnet had already agreed to pay him.

At the very least, there are **substantial questions of material fact** in connection with all three of these claims.  Accordingly, summary judgment is inappropriate, and Kadirnet's Motion should be denied.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that the trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Courts must review the summary judgment evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.  *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 924 (5th Cir. 2018).  Additionally, courts review Fair Labor Standards Act claims liberally in favor of employees.  *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 425 (5th Cir. 2006).

## III. ARGUMENTS & AUTHORITIES

### A. Bush's claim under the Fair Labor Standards Act ("FLSA")

Every few weeks, and sometimes for several weeks in a row, Kadirnet required Bush to work a regular workweek of 40 hours, and also an "On-Call" shift from 5 p.m. to 8 a.m., and 24 hours on weekends.  He never received any overtime pay.  (Ex. 1, payroll records).

**1. After-Hours Shift Claim**

When Kadirnet required its Network Technicians to take what it termed "On-Call" shift, it required the technician working the shift to be available 24/7. (Bush Dep. 34:18-25). One of the technician's primary duties when working after hours was to receive incoming service phone calls from clients. Kadirnet required the technicians to answer all calls, and if a call was missed, management would address the issue with the technician the next working day. (Dawson Dep. 24:22 – 25:10, 51:14-17). As the company grew over Bush's tenure, the call volume increased to the point where he could not realistically be anywhere but home. (Bush Dep. 132:14 – 133:2).

But the work entailed more than just answering phone calls. (Bush Dep. 62:3 – 63:6, 91:18 – 93:16; Burk Dep. 34:3-13). Kadirnet's depiction of the work in its Motion paints a picture of a technician spending a limited amount of time on the phone, and then taking a moment or two to log the call. This depiction ignores the reality of the work entailed. There were monitoring duties, where the technician was required to be aware of the status of a given property based on an indication on a website. (Bush Dep. 62:10-63:6). The monitoring duties were ongoing. There were also notification duties, where after an outage, the technician was required to provide status updates to management at designated intervals. (Bush Dep. 91:18 – 92:8). And for all of these duties, the technician was required to be available at a moment's notice, or the failure

would be addressed when he went to work the next day.  (Bush Dep. 91:18-22; 93:13 – 94:8; Dawson Dep. 25:9-10).

Kadirnet also misrepresents the facts when it states that Bush fielded an average of 1.4 to 2.85 calls per day.  (Bush Dep. 110:19 – 111:3).  In addition to Bush's recollection that he fielded 10-20 phone calls a day when working after-hours, he referred to phone records as further evidence of his after-hours work.  (Bush Dep. 173:7-9).  The phone records produced in discovery belie Kadirnet's assertions.  On weeks when Bush was not working after hours, the phone records show little to no work-related activity after normal shift hours.  See, for example, the week of September 4, 2017.  (Kadirnet_00379 - 00382, within Ex. 2, phone records).  On the other hand, during weeks when he was working the "on-call" shift, there is substantial work-related phone activity.  See, for example, the week of July 17, 2017.  (Kadirnet 00363 – 00368, within Ex. 2, phone records).  There are far greater than the one to three calls a day that Kadirnet claims.  Bush can in this way identify all weeks when he worked "on call."

And fielding these calls was often full-time work.  For example, on the evening of March 14, 2017, Bush received 28 work phone calls from the time he got off work at 5:00pm until midnight, with less than 30 minutes between any of them, and less than 15 minutes between most of them.  And on the night of Monday, January 15, 2017, into the early morning of Tuesday, January 16, Bush received work phone calls at 10:03pm, 10:45pm, 11:56pm, 12:33am, 1:06am, 1:15am, 1:25am, 2:39am, 4:06am, and 5:18am, and

was then required to be at work at Kadirnet's offices by 8:00am.  (Kadirnet 00300, within Ex. 2, phone records).  Going through all of the phone records available, Bush can in this way provide evidence of the amount and extent of work that this shift entailed.

For an employee to be actively engaged in the company's required duties: monitoring client sites; taking phone calls at all hours, often with little to no down time between them; logging those phone calls; and being brought to task if any were missed – that employee is spending time predominantly for the benefit of the employer.  *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5th Cir. 1998).

The Supreme Court's recent developments on the predominant benefit test ask whether the activities in question are an "integral and indispensable part of the [employee's] principal activities."  *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014).  The Court found that an activity was "integral and indispensable" if it is an "intrinsic element" of the employee's principal activities.  *Id.*

Bush maintains that the work he performed while on duty after hours was in essence the same as the work that he performed during regular shift hours, except that it was performed remotely.  (Bush Dep. 62:3-11).  **His readiness and availability were an integral part of his principal activities** – and immediate readiness was required.  The time spent lying in wait for service calls is compensable under the FLSA and relevant precedent.  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

In any case, whether time is compensable under the FLSA depends on all the circumstances of the case. *Armour*, 323 U.S. at 133. And the test for determining whether time is compensable as time spent for the employer's benefit is a question of fact. *Naylor v. Securiguard, Inc.*, 801 F.3d 501, 508 (5th Cir. 2015); *Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998); *Allen v. Atlantic Richfield*, 724 F.2d 1131, 1136 (5th Cir. 1984). Summary judgment should be denied.

**2. Unpaid Overtime Claim**

Regardless of whether all the time Bush spent working the after-hours shift is compensable, it is undeniable that Bush regularly worked in excess of his regular 40-hour workweek without overtime compensation. Each time the rotation placed Bush in "On-Call" duty, he received a $100 bonus for working the week-long shift.[1] Kadirnet seems to take the position that this bonus accounts for Bush's compensation for the time he spent working after hours. **But the bonus is in no way tied to *how much time* Bush spent working after hours.** To be sure, there *is* no record of how much time Bush spent working after hours. (See Ex. 3, time sheets; Bush Dep. 98:22 – 99:10). The ultimate fact is that Kadirnet required Bush to work in excess of 40 hours in a workweek on a regular basis and did nothing to account for how many hours that was. (Dawson Dep. 36:11-13; Burk Dep. 38:1 – 39:3).

---

[1] This bonus was raised to $200 in January of 2018.

When an employer fails to keep the required records of overtime hours its employees work, an employee may show "that he has in fact performed work for which he was improperly compensated" and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688-89 (1946).  Bush can provide evidence to that effect, as detailed below.

Once Bush has carried this burden, it becomes Kadirnet's burden to come forward with evidence of the precise amount of work performed, or with evidence negating the reasonableness of the inference.  *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 Fed. App'x 448, 455 (5th Cir. 2009).  This Kadirnet cannot do, precisely *because* it did not keep accurate records of the amount of time its Network Technicians worked when they worked after hours.

### a. "That he has in fact performed work"

Kadirnet has produced several different documents that evidence Network Technicians generally, and Robert Bush specifically, working an unknown amount of time in excess of 40 hours without being paid overtime.

As Kadirnet's Motion notes, Bush's payroll records indicate weeks in which he received "on-call pay" – sometimes referred to as a "bonus" – a category of pay that Kadirnet would not likely have if its employees did not work the on-call shift after

hours. (Ex. 1, payroll records). The problem is that this flat pay is wholly unmoored to the amount of time Bush worked after hours in a given week. (Burk Dep. 62:18-23). Still, it is reasonable to infer that he worked *some* amount of time. It is unclear at best whether the bonus can account for adequate compensation, although Bush asserts that it was not compensation for time worked at all. Rather, it was a bonus for taking the after-hours shift. (Bush Dep. 79:23 – 80:1). It is further worth noting that the payroll records include a weekly line item for "Overtime pay." That line item is $0 throughout Bush's tenure. (Ex. 1, payroll records).

Additionally, Bush's weekly time sheets – taken as a whole and viewed in the light of the deposition testimony of both of Bush's supervisors – are evidence that the company was not interested in keeping records of how much time its technicians actually worked. (Ex. 3, time sheets). Out of **one hundred and eight weeks** of time sheets, **not one** deviates from the schedule 8 a.m. to 12 p.m., 1 p.m. to 5 p.m., Monday to Friday, except to indicate whether Bush was "on-call." *Id.* When questioned about this feature of the time sheets, Bush's direct supervisor, Dawson, indicated that it was not his responsibility to verify the accuracy of the time worked. (Dawson Dep. 39:3-12). And Bush's second-tier supervisor, Burk, testified that this was merely evidence that Bush was bad at filling out his time sheets. (Burk Dep. 51:14-18). He also testified that he never did anything to try to correct this practice. (Burk Dep. 28:12-19; 52:17 – 53:7).

All of this evidence surrounding the time sheets leads to a reasonable inference that the time sheets themselves are not accurate evidence of time actually worked. It could lead to a reasonable inference that Dawson and Burk, as supervisors, merely rubber-stamped the time sheets without any effort or regard for their accuracy. It could even lead to the reasonable inference that Bush himself was directed to accept these inaccurate time sheets and rubber-stamp them himself.

In the end, the payroll record, time sheet, and deposition evidence indicates that Bush and other Network Technicians worked in excess of 40 hours per week without overtime compensation.

**b. "The amount and extent of that work"**

As to the amount and extent of the after-hours work Bush performed for no overtime pay, the phone records for Bush's work phone provide some insight. These records show substantial after-hours activity some weeks, and virtually none other weeks. (Ex. 2, phone records). It is reasonable to infer that the former would indicate a week during which Bush was working the after-hours "on-call" shift, while the latter indicates he was not. (Compare, e.g., Kadirnet_00289 to Kadirnet_00290 within Ex. 2, phone records). If one were to list out all after-hours calls, one would get some indication of the amount and extent of the after-hours work performed.

But the inquiry does not stop with the minutes spent on the phone. The work Network Technicians performed did not start and stop with answering and hanging up the phone; the work entailed substantial time not on the phone. (Bush Dep. 62:3 – 63:6, 91:18 – 93:22, 98:22 – 99:10).

Nonetheless, Bush can estimate the amount and extent of the work he performed after-hours first by extrapolating reasonable inferences from his work phone records, and second by educing testimony about the general nature of the work performed. Under *Mt. Clemens* and its progeny, it becomes Kadirnet's burden to negate these inferences, or to show the precise amount of after-hours work Bush performed. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 Fed. App'x 448, 455 (5th Cir. 2009).

Kadirnet can do neither, so summary judgment should be denied.

**c. Fluctuating Workweek**

Kadirnet asserts that even if Bush can satisfy his burdens concerning the overtime he worked, any unpaid overtime should be calculated using the fluctuating workweek method. This method is inappropriate in this case for several reasons.

The fluctuating workweek method is appropriate when an employee's working hours fluctuate from week to week, and the employer and employee have a clear understanding that a fixed salary is compensation for the hours worked each week,

whether many or few. 29 C.F.R. § 778.114(a); *Dacar v. Saybolt, L.P.*, 914 F. 3d 917, 921 (5th Cir. 2018).

Kadirnet points first to Bush's employment agreement as evidence of the understanding between the parties. (Ex. 4, employment agreement). The agreement does indicate that Bush will be paid a "non-exempt salary," but it does not indicate that the hours worked will fluctuate. And at first, the hours did not fluctuate. It was only after Bush was added into the "on-call rotation" that his working hours differed. (Bush Dep. 31:11-18). And even then, they did not differ from week to week in a traditional sense. Bush would work his regular shift of 40 hours on weeks where he was not "on call," and he would work his regular shift of forty hours *plus* whatever overtime he worked when he worked the "on-call" shift. (Bush Dep. 64:2-4). In any case, Bush was told that he would be working the on-call shift after he had already been established at Kadirnet, and not as a mutual understanding between the parties at the initiation of his employment. (Bush Dep. 132:14-17).

Kadirnet also points to the parties' course of conduct throughout Bush's employment as evidence of the understanding between the parties. But Bush has consistently maintained that he raised questions about technicians' pay for the on-call shift. (Bush Dep. 47:11 – 49:4; 61:2-22). He only continued to accept the status quo under protest, and because accepting what he deemed an unfair compensation structure was preferable to him over having no compensation at all. (Bush Dep. 68:10-21).

The Fifth Circuit has recognized that while the fluctuating workweek method may satisfy some employers' overtime compensation calculations, courts require four prerequisites for its use:

1) the employee's hours must fluctuate from week to week;

2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);

3) the fixed amount must provide compensation every week at a regular rate at least equal to the minimum wage; and

4) the employer and employee must share a clear mutual understanding that the employer will pay the fixed salary regardless of the number of hours worked.

*Dacar*, 914 F. 3d at 924.

As described above, Kadirnet fails on prong four – Bush and Kadirnet did not have a clear, mutual understanding that the fixed salary was to cover all hours worked, no matter the number. But Kadirnet also fails on prong two. When Bush worked an on-call week, he was paid a bonus of $100 (later $200) that he did not receive for weeks when he did not work the on-call shift. This bonus is analogous to the "incentive payments" Saybolt paid Dacar. *See Id.* at 922. The Fifth Circuit found that the incentive payments caused weekly variance in the straight-time pay, making the fluctuating workweek method inappropriate. *Id.* at 924-25.

So here, the bonus pay for an on-call shift week made Bush's weekly pay vary based on whether he was working more than his regular 40 hour shift or not. Because Kadirnet did not follow the requirements for applying the fluctuating workweek method, this method does not apply to this case.

### 3. Willfulness

Claims under the FLSA are subject to a two-year statute of limitations that is extended to three years if the employer's conduct is deemed willful. 29 U.S.C. § 255(a). A willful violation occurs when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Saybolt v. Dacar*, 914 F.3d 917, 926 (5th Cir. 2018), *quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Bush's direct supervisor, Dawson, or the director of operations, Burk, reviewed Bush's weekly time sheets and signed them before submitting them for payroll. (Dawson Dep. 8:16-19). Dawson testified that he did not check that the time recorded on the time sheets accurately reflected the time worked. (Dawson Dep. 36:11-13). Burk testified that it was the employee's responsibility, and not the employer's, to ensure that time was accurately reflected on the time sheet, and that he did not verify the time sheet's accuracy on that point. (Burk Dep. 24:9-20). The time sheets on their face do not accurately reflect the amount of time worked, because "on-call" time sheets never show

different hours than non-on-call time sheets.  (Ex. 3, time sheets).  Bush testified that he approached both Dawson and Burk about the legality of Kadirnet's on-call compensation scheme – or lack thereof.  (Bush Dep. 48:2-12).  He testified that Burk blew him off.  (*Id.*).  Employers act willfully when they ignore complaints brought to their attention.  *Mohammadi v. Nwabuisi*, 605 Fed. App'x 329, 332 (5th Cir. 2015).

All of this evidence, taken together, shows a reckless disregard on Kadirnet's part for whether Bush was being adequately compensated for his work performed after the hours of his regular shift.  The three-year statute of limitations should apply.

**4. Good Faith**

The FLSA provides for liquidated damages in an amount equal to actual damages.  29 U.S.C. 216(b).  A district court may in its sound discretion refuse to award these liquidated damages if an employer is able to show that it acted in good faith and had reasonable grounds for believing it was not in violation.  *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 931 (5th Cir. 2018).  Unlike the determination of an employer's willfulness, the employer bears the burden of showing its good faith.  *Id.*

Kadirnet asserts that Burk believed Kadirnet's payment practices comported with the industry standard.  Burk's deposition testimony belies this declaration.  Indeed, Burk testified that he did not know the industry standard.  (Burk Dep. 22:5-9).  Bush, on the other hand, testified about other companies in the industry that paid a

similar bonus to the one Kadirnet paid, **and then also** paid their technicians overtime for working overtime. (Bush Dep. 80:20-25). Burk also states for Kadirnet's summary judgment that the "on-call time compensation" was intended to cover all work performed by Bush outside his regular hours. But Bush testified that it was never his understanding that that was the case. (Bush Dep. 80:20 – 81:4). He also testified that *no one* thought that was the case, not even Burk. (Bush Dep. 48:20 – 49:4, 81:20 – 82:4). This even included employees who did not work the on-call shift. (Bush Dep. 49:13-17, 52:25 – 53: 3). Compounding this issue is that Kadirnet never tried to record how much time Bush actually worked after hours. (Dawson Dep. 36:11-13; Burk Dep. 41:19-23). That being the case, it was at least reckless as to whether the on-call time compensation was sufficient to pay for the hours worked.

Kadirnet also asserts that Bush never complained about the pay structure – Bush's testimony is the opposite, as noted above. (Bush Dep. 48:2-12). Furthermore, other employees complained, too. (Bush Dep. 40:21-24).

Finally, Kadirnet relies on its "willfulness" analysis to show its good faith. This reliance ignores the shifting of the burden from the employee to the employer to show good faith. *See Dacar*, 914 F. 3d at 931.

## B.  Unpaid Leave Time Claim

At the time Kadirnet laid Bush off, he was scheduled to take a one-week paid vacation.  The time off had already been approved.  (Bush Dep. 13:5-9).  It was Bush's understanding that he had accrued more than sufficient leave time to cover the request.  After he was laid off, he never received any compensation for the paid time off he had accrued, including the vacation that had already been approved.  (Bush Dep. 20:10-13).

Kadirnet asserts that Bush had already taken all the time he qualified for.  But it asserts that he was only eligible for two weeks, when he was eligible for three.  (Bush Dep. 16:3 – 17:13).  There are at least genuine questions of material fact whether Kadirnet owes Bush accrued paid time off.

Bush seeks this missing compensation.

## IV.  CONCLUSION

Bush has provided evidence that Kadirnet violated the Fair Labor Standards Act with respect to his employment.  He has shown that he worked in excess of 40 hours per week without being properly compensated.  He has raised genuine disputes as to material facts in connection with all his claims.  Accordingly, Bush prays this Court to deny the defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

/s/ Matthew Johnston
Matthew Johnston
Texas Bar No. 24080966

M Johnston Law PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
matt@mjohnstonlaw.com
512-852-4399

*Attorney for Robert Bush*

### Certificate of Service

I certify that a copy of this document is being served on the defendant today, December 20, 2019, through the CM/ECF system to the following counsel:

William Hammel
Fox Rothschild LLP
5420 Lyndon B. Johnson Fwy., Suite 1200
Dallas, Texas 75240
bhammel@foxrothschild.com
972-991-0889

/s/ Matthew Johnston
Matthew Johnston