IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT BUSH, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:18-CV-1024-RP |
| KADIRNET, LLC, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Kadirnet, LLC's ("Kadirnet") motion for summary judgment, (Mot., Dkt. 16; Mot. App'x, Dkt. 16-1), and accompanying briefing, (Resp., Dkt. 19; Resp. App'x, Dkt. 24; Reply, Dkt. 21). After considering the parties' arguments, the record, and the relevant law, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

Plaintiff Robert Bush ("Bush") filed his complaint in this case on November 29, 2018. (Dkt. 1). From October 21, 2015, to May 2018, Bush worked for Kadirnet, an internet service provider, as a network technician. (*Id.* at 2; Def.'s Ex. A-2, Dkt. 16-1, at 11). He alleges that starting in December 2015, he was placed on an "'on-call' rotation" in which during week-long periods, he was required to "immediately answer all after-hours calls" and "to be logged into Kadirnet's system in order to monitor outages and resolve issues remotely if at all possible." (Compl., Dkt. 1, at 3). Kadirnet later implemented a time-tracking system for on-call technicians, which Bush says was buggy and did not properly account for all time spent dealing with issues that arose during the on-call shifts. (*Id.* at 4–5). Kadirnet later terminated Bush's employment "because it had lost its primary contract," though Bush returned "for a few months" as an independent contractor. (*Id.* at 5–6). Bush now claims that Kadirnet's on-call pay structure violated the FLSA, 29 U.S.C. § 207, and that it breached their

1

employment agreement "by not compensating him for accrued leave time when his employment was terminated." (*Id.* at 7).

Kadirnet timely filed its motion for summary judgment. (Mot. Dkt. 16; *see* Order, Dkt. 15, at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmoving party is required to identify specific evidence in the record and to articulate the precise way that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56

does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmoving party's opposition to the motion for summary judgment. *Id.* After the nonmoving party has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find in its favor, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000). The court must view the summary judgment evidence in the light most favorable to the nonmoving party. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. ANALYSIS

#### A. Bush's FLSA Claims

Bush claims that "Kadirnet has violated the Fair Labor Standards Act with respect to Bush, specifically for repeatedly not paying him for work he performed in excess of 40 hours per week." (Compl., Dkt. 1, at 6). In general, courts "construe the FLSA liberally in favor of employees, and exemptions 'are to be narrowly construed against the employers seeking to assert them.'" *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

1. <u>After-Hours/Idle Time Claim</u>

Bush alleges that Kadirnet failed to count the time he spent working during on-call shifts as compensable. (Resp., Dkt. 19, at 2). He argues that Kadirnet's "requirement that all calls be answered immediately—and not, for example, returned within a reasonable time—significantly impeded the on-call technician's ability to use any time to follow his own pursuits," rendering it "in effect the same as being on shift." (Compl., Dkt. 1, at 4–5). As Kadirnet describes it, Bush's claim is that 128 hours per on-call week (168 hours in a week minus the regular 40-hour workweek) were compensable overtime. (Mot., Dkt. 16, at 5).

Kadirnet maintains that "Bush cannot meet his burden to show that the time he spent on-call was restricted and predominantly for the benefit of Kadirnet," citing Bush's deposition

3

testimony that it says shows "he enjoyed a substantial amount of freedom to engage in personal activities" while on call. (*Id.* at 5–6 (citing Bush Dep., Ex. D, Dkt. 16-1); *see also* Reply, Dkt. 21, at 1–2). Bush, in response, stresses the characteristics of on-call shifts which in his view Kadirnet's argument omits: ongoing "monitoring duties" and "notification duties," which required him "to be available at a moment's notice," as well as the high frequency of nighttime calls. (Resp., Dkt. 19, at 4–6).

"Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case," and "inactive duty may be duty nonetheless." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). "'Predominant benefit' is typically a fact question on which the employer bears the burden." *Naylor v. Securiguard, Inc.*, 801 F.3d 501, 508 (5th Cir. 2015). "Under the [FLSA], an on-call employee is not entitled to 'have substantially the same flexibility or freedom as he would if not on call,' and is not entitled to payment for on-call time if he is able to use it effectively for personal purposes, such as eating, sleeping, watching television, or engaging in other recreational activity." *DePriest v. River W. LP*, 187 F. App'x 403, 405 (5th Cir. 2006) (quoting *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 677 (5th Cir. 1991)). Still, though, while "the particular facts in each case are determinative," "the resulting categorization as working or nonworking time" is not "necessarily always a factual rather than a legal question." *Bright*, 934 F.2d at 674–75. In other words, "on-call time may be working time," but that is not always so. *Id.* at 675 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138-40 (1944); *Armour*, 323 U.S. at 132–33). "[A]n agreement between the parties is relevant to the issue of compensability for periods during which an employee is required to be on-call or standby." *DePriest*, 187 F. App'x at 404. If "undisputed facts show that the on-call time is not working time," the categorization may be decided "as a matter of law." *Bright*, 934 F.2d at 675. So, ultimately, "[w]hether on-call time is compensable working time depends upon the working agreements between the parties governing on-call work

4

and the degree to which the employee is permitted or free to engage in personal activities during periods of idleness when he is subject to call." *DePriest*, 187 F. App'x at 404–05.

Initially, the evidence of the parties' agreement in the record does not resolve any particular fact dispute as to this issue. Nothing in Bush's employment agreement, including in the section concerning compensation, discusses on-call shifts. (Def.'s Ex. A-2, Dkt. 16-1, at 11–13; Pl.'s Ex. 4, Dkt. 24, at 55–56).[1] Indeed, neither Bush nor Kadirnet filled in the blanks in that section. (Def.'s Ex. A-2, Dkt. 16-1, at 11–12).

Thus, the crux of the issue is the degree to which Bush was free to engage in personal activities during his on-call shifts. *See DePriest*, 187 F. App'x at 404–05. The Court finds that a genuine dispute of material fact exists concerning whether Bush had "substantially the same flexibility or freedom as he would [have had] if not on call." *Bright*, 934 F.2d at 677. For instance, when examining evidence that Bush received ten calls throughout a particular night, with each triggering a number of other tasks, a reasonable jury could conclude that he was not able to effectively use any idle time between the calls (if any existed) for personal activities. (*See* Resp., Dkt. 19, at 5–6). Similarly, upon hearing evidence that Bush was occasionally able to use social media or practice the guitar while on call, a reasonable jury could find that he was sufficiently free during that time so as to render it noncompensable. (*See* Mot., Dkt. 16, at 6). While that characterization is in the end a legal question, the need for a close examination of the specifically disputed facts in this case renders it not amenable to summary judgment.

2. Unpaid Overtime Claim

Next, Bush alleges that Kadirnet did not pay him overtime for work he performed when on call, violating the FLSA. (Compl., Dkt. 1, at 4–6). He explains that he received a "$100 bonus" for

---

[1] The parties provide copies of the same document. In Bush's copy, an illegible sticky note obscures a portion of the agreement; in Kadirnet's copy, that portion is blank.

5

each week-long on-call shift he worked, an amount that remained static no matter how much he worked in a given on-call week, and that Kadirnet did not keep reliable records of his true working hours. (Resp., Dkt. 19, at 7–10). He then argues that he "can estimate the amount and extent of the work he performed after-hours first by extrapolating reasonable inferences from his work phone records, and second by educing testimony about the general nature of the work performed." (*Id.* at 11).

Kadirnet, on the other hand, maintains that Bush cannot meet his burden of providing evidence sufficient to show "the amount and extent of his work as a matter of just and reasonable inference." (Mot., Dkt. 16, at 7). It asserts that not only is Bush unable to identify the precise number of on-call weeks he worked during his employment with Kadirnet, but that he cannot estimate with precision how many hours he worked in any particular on-call week (in the absence of the records that it failed to keep). (*Id.* at 7–8). And even if he were able to provide this evidence, Kadirnet argues, Bush's compensation would be subject to the "fluctuating workweek" method of calculating overtime pay, which would mean that he should be paid an identical weekly salary regardless of varying hours. (*Id.* at 9–11; Reply, Dkt. 21, at 4–5).

When confronted with a situation in which the employer has not kept adequate records of time worked, courts require the employee first to "prove[ ] that he has in fact performed work for which he was improperly compensated" and second to "show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). If she can do that, then the burden shifts to her employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88. This burden-shifting analysis is meant neither to "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work" nor to incentivize the employer to keep

6

poor records. *Id.* at 687. Still, the employee "must provide more than mere 'unsubstantiated assertions'" about the hours she allegedly worked. *Kirk v. Invesco, Ltd.*, 700 F. App'x 334, 337 (5th Cir. 2017) (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)).

The Court finds that a genuine dispute of material fact arises at each step of this analysis. First, Kadirnet argues that "Bush cannot identify how many weeks or days he contends he worked on call." (Mot., Dkt. 16, at 8). Bush responds that the weeks for which his payroll records reflect he received the on-call bonus were weeks he worked on-call. (*See* Resp., Dkt. 19, at 8–9). Kadirnet replies that "these records do not reflect whether he actually worked on-call time those weeks." (Reply, Dkt. 21, at 3). In other words, Kadirnet argues that the payroll records *it* kept—which it calls "admittedly unreliable"—cannot support any inferences that Bush did or did not work overtime. (*Id.*). This argument subverts the rule: "[s]uch a result would place a premium on [Kadirnet's] failure to keep proper records in conformity with [its] statutory duty." *Anderson*, 328 U.S. at 687; *see also id.* at 688 ("And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances."). The material question of which weeks or days Bush did indeed work on call is one better left for the jury, which can review the payroll records supplemented by trial testimony.

Second, Kadirnet argues that Bush "does not and cannot provide an estimate of the amount of time he spent receiving and processing calls for any given workweek." (Mot., Dkt. 16, at 8; *see also* Reply, Dkt. 21, at 3). It stresses that the particular characteristics of each week, such as whether Bush used paid time off or how many calls he took in a particular on-call day, make it impossible for Bush to broadly assert any conclusion about all weeks. (Reply, Dkt. 21, at 3–4). But the effects of certain leave forms or phone records on the total number of hours Bush worked in a given week are inherently factual issues. The Court finds that Bush has met his threshold burden to assert evidence

that could show the amount and extent of the work he performed. It is up to the jury to decide if it really does and/or if Kadirnet's evidence of its pay practices negate Bush's evidence.

Kadirnet also contends that any overtime to which Bush is entitled must be calculated using the fluctuating workweek method. (Mot., Dkt. 16, at 9–10; Reply, Dkt. 21, at 4–5). That method "is appropriate when an employee works hours that fluctuate from week to week and the employee agrees that a fixed weekly salary will constitute straight-time pay (i.e., non-overtime pay) for all the hours worked in a week, however many or few." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 921 (5th Cir. 2018) (citing 29 C.F.R. § 778.114(a)), *as amended on denial of reh'g and reh'g en banc* (Feb. 1, 2019). The validity of the fluctuating workweek method's application depends on whether there is "a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek." 29 C.F.R. § 778.114(a). "The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account." *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 615 (5th Cir. 2017). "[E]mployees bear the burden of demonstrating that the fluctuating workweek method is inapplicable." *Id.*

While Bush is correct that the employment agreement does not explicitly indicate the hours will fluctuate, (*see* Resp., Dkt. 19, at 12), Kadirnet is correct that the method of calculation it specifies is akin to a fluctuating workweek, (*see* Mot., Dkt. 16, at 10). *See Dacar*, 914 F.3d at 921 ("[T]he 'regular rate' under the FWW method is determined by dividing the weekly base salary by the total number of hours an employee actually works during the week."). The agreement further provides that the resulting "exact amounts and what is then done with the regular rate will vary according to the exact situation." (Def.'s Ex. A-2, Dkt. 16-1, at 11). This provision suggests that the parties understood that the precise work schedule each week might be different even if they did not know

the nature of that difference at the outset, contrary to Bush's assertions otherwise. (*See* Resp., Dkt. 19, at 12).

However, Bush provides sufficient evidence that a genuine dispute of material fact exists concerning whether he and Kadirnet shared that understanding later on. He states that he repeatedly objected to the pay calculation method, evincing a lack of clear mutual understanding. (*Id.*). Kadirnet's reply that Bush understood that he received the same amount of money per week, (Reply, Dkt. 21, at 5), misapplies the notion of a shared normative "understanding": merely because Bush was aware of his pay does not mean he thought it was valid. While it is indeed Bush's burden to show the fluctuating workweek method is inappropriate, Kadirnet is not entitled to summary judgment on whether Bush has met that burden.

### 3. Kadirnet's Willfulness

Bush argues that Kadirnet's conduct was willful. He contends that Kadirnet supervisors did not check the accuracy of time sheets and he complained to supervisors about the on-call shift pay calculation method on multiple occasions, only to be rebuffed. (Resp., Dkt. 19, at 14–15). Kadirnet, meanwhile, characterizes Bush's complaints as having merely been about his desire to make more money. (Mot., Dkt. 16, at 12; Reply, Dkt. 21, at 6).

Generally, FLSA claims are subject to a two-year statute of limitations, extended to three years if the employer's conduct can be considered willful. 29 U.S.C. § 255(a). "A willful violation occurs when the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Dacar*, 914 F.3d at 926 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). For instance, "employers act willfully when they . . . ignore complaints brought to their attention" about their pay structures. *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). "Evidence that a defendant was merely negligent regarding FLSA requirements is insufficient to show willfulness," *Dacar*, 914 F.3d at 926, as is "a completely good-faith but incorrect assumption

9

that a pay plan complied with the FLSA," *McLaughlin*, 486 U.S. at 135. "Plaintiffs bear the burden of establishing a defendant's willfulness." *Dacar*, 914 F.3d at 926 (citing *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009)).

This is a quintessential fact issue, precluding summary judgment. The jury will be best situated, based on its evaluation of competing witness testimony at trial, to determine the nature of Bush's complaints and thus whether Kadirnet acted willfully within the meaning of the FLSA.

4. Kadirnet's Good Faith

Kadirnet maintains that even if it violated the FLSA, it did so in good faith, believing that its pay practices were valid. (Mot., Dkt. 16, at 12–13; Reply, Dkt. 21, at 6–7). It cites its supervisors' deposition testimony that those practices comported with industry standards and highlights what it characterizes as the practices' "not concealed" nature. (Mot., Dkt. 16, at 13). Bush disputes both of these assertions. (Resp., Dkt. 19, at 16).

"The FLSA provides that liquidated damages be awarded for FLSA violations in an amount equal to the actual damages." *Dacar*, 914 F.3d at 931 (citing 29 U.S.C. § 216(b)). "A district court may, 'in its sound discretion,' refuse to award liquidated damages if the employer demonstrates good faith and reasonable grounds for believing it was not in violation." *Id.* (quoting 29 U.S.C. § 260). Unlike willfulness, for which the employee bears the burden of proof, the employer "bears the 'substantial burden' of proving the reasonableness of its conduct." *Id.* (quoting *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 387 n.16 (5th Cir. 2013)).

Again, the issue of whether Kadirnet acted in good faith is best left to the jury, which can judge Kadirnet's witnesses' testimony about what they believed while administering their pay practices. Certainly, at this stage, Kadirnet has not met the "substantial burden" that would entitle it to summary judgment.

### B. Bush's Unpaid Leave Time/Breach of Contract Claim

Finally, Bush asserts that he is entitled to compensation for a one-week paid vacation that was scheduled when he was terminated, as well as an additional week. (Mot., Dkt. 16, at 14; Resp., Dkt. 19, at 17). He states that while Kadirnet claims he was only eligible for two weeks of paid vacation, he was really eligible for three. (Resp., Dkt. 19, at 14). Kadirnet notes that Bush's claim is for breach of contract, which under the applicable Texas law requires him to establish the existence of a germane, valid contract—that is, one addressing paid time off policy. (Mot., Dkt. 16, at 14 (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)). It points out that Bush has not identified the existence of any written or oral contract to that effect; his employment agreement is silent on the issue. (Mot., Dkt. 16, at 14; Def.'s Ex. A-2, Dkt. 16-1, at 11–13). And it argues that "[t]he sole fact that Kadirnet provided paid time off is insufficient to establish his breach of contract claim." (Mot., Dkt. 16, at 14 (citing Tex. Lab. Code § 61.001(7)(B))).

On this record, Kadirnet is entitled to summary judgment on Bush's breach of contract claim. *See, e.g.*, *Givens v. Will Do, Inc. Houston*, No. 4:10-CV-02846, 2012 WL 1597309, at *8 (S.D. Tex. May 4, 2012) (granting summary judgment to employer when employee did not provide "any evidence of . . . a written policy or agreement that would show she was entitled to vacation pay"); *Kroesche v. Texas Workforce Comm'n*, No. 13-18-00671-CV, 2019 WL 3953115, at *2–3 (Tex. App.—Corpus Christi-Edinburg Aug. 22, 2019, no pet.) (similar).

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Kadirnet's motion for summary judgment, (Dkt. 16), is **GRANTED IN PART AND DENIED IN PART**. It is granted as to Bush's breach of contract claim. (*See* Compl., Dkt. 1, at 7). It is denied as to Bush's FLSA claims. (*See* Compl., Dkt. 1, at 6).

**SIGNED** on February 19, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE